1   **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9   Seychelles Organics Inc.,              )   No. CV-11-1746-PHX-FJM
                                           )
10           Plaintiff,                     )   **ORDER**
                                           )
11   vs.                                    )
                                           )
12                                          )
    John R. Rose,                          )
13                                          )
             Defendant.                     )
14                                          )
                                           )
15   _____)

16

17

18        Before the court is plaintiff's motion for an order to show cause (doc. 61), defendant

19   Rose's response (doc. 63), Julie Alcantar and AnuMed International's response (doc. 64),

20   plaintiff's replies (docs. 65, 66); plaintiff's renewed motion (doc. 67), defendant Rose's

    response (doc. 69), Maria Esparza and Signature Formulations' objection and response (docs.

21   70, 71), and plaintiff's reply (doc. 72).

22                                        **I.**

23        The parties in this case have a long and tortured history.  In November 2006, plaintiff

24   Seychelles Organics purchased the assets of several entities owned, managed, or serviced by

25   John Rose ("Rose Entities") for $7 million.  The Rose Entities formulated, manufactured,

26   marketed and sold creams, lotions, cosmetics, and nutritional supplements, including

27   progesterone-based products.  As part of the asset purchase agreement, Rose executed a non-

28

1   compete agreement ("NCA"), promising not to participate, directly or indirectly, in any

2   business similar to the Rose Entities for a period of three years.  The parties agreed that the

3   three-year period would begin to run following the termination of Rose's employment with

4   Seychelles.  Rose was terminated by Seychelles in August 2007, therefore the NCA was set

5   to expire no later than August 2010.

6        Seychelles claims that before the expiration of the NCA, Rose violated its terms by

7   providing services to AnuMed International in direct competition with the Rose Entities.  In

8   August 2008, Seychelles filed a complaint in Utah state court seeking enforcement of the

9   NCA.  In May 2009, the Utah court issued a preliminary injunction ordering Rose to comply

10  with the terms of the NCA.  Nevertheless, Rose continued to violate the agreement.  One day

11  before Rose was scheduled to appear to show cause as to why he should not be held in

12  contempt, Rose filed a bankruptcy petition in the District of Arizona.  Seychelles responded

13  by filing an adversary proceeding in Rose's bankruptcy case and a trade dress infringement

14  action in the United States District Court for the District of Utah.

15       In April 2011, following mediation, the parties executed a Settlement Agreement,

16  resolving all claims in each of the three actions.  Seychelles agreed to dismiss the litigation

17  and withdraw its proof of claim.  In exchange, Rose agreed to the immediate entry of

18  judgment against him in the amount of $1 million, as well as the entry of a permanent

19  injunction, prohibiting him from participating in any business in competition with the Rose

20  Entities for a period of 25 years from the settlement date.  Specifically, the injunction broadly

21  prohibits Rose, and any of his agents, employees, or affiliates, or anyone with whom he

22  consults, "from producing, marketing, selling or distributing any product in any form

23  containing any one or more of the following hormones: (i) Progesterone; (ii) Testosterone;

24  (iii) Estrodial; (iv) Estriol; (v) Pregnenolone."  (Doc. 1, ex. A, ¶ 4(a)).

25       As part of the Settlement Agreement, Seychelles agreed to forbear taking action to

26  collect on the $1 million judgment so long as Rose timely complied with his obligation to pay

27  $180,000 over a 5-year period and "remain[ed] in compliance with the terms of the

28  injunction."  Id. ¶ 6.

1    The bankruptcy court approved the Settlement Agreement and issued proposed
2    findings of fact and conclusions of law.  We adopted the bankruptcy court's findings and
3    conclusions and granted the parties' stipulated motion for entry of final judgment and
4    permanent injunction ("Stipulated Judgment") (doc. 6), which incorporated the terms of the
5    Settlement Agreement.

6    In 2013, Seychelles filed a motion to reopen this case, contending that Rose defaulted
7    on his payment obligations under the Settlement Agreement and continued to violate the
8    terms of the NCA.  Seychelles notified Rose of the termination of its forbearance obligation
9    and began efforts to collect on the $1 million Stipulated Judgment.

10   On January 15, 2013, AnuMed filed a separate action against Seychelles seeking a
11   declaration that AnuMed was not a party to the Settlement Agreement and not bound by its
12   terms.  AnuMed Int'l, LLC v. Seychelles Organics, Inc., No. CV-13-0098-PHX-MHB (D.
13   Ariz. Jan. 15, 2013) (Burns Case).  Rose subsequently joined as a party plaintiff.  AnuMed's
14   complaint has been dismissed and all that remains of the Burns Case is Rose's claim seeking
15   a declaration that the $1 million Judgment "is so grossly excessive" that it constitutes an
16   "unenforceable penalty."  Burns Case, Amended Compl. (doc. 13, ¶ 41).

17   In July 2014, Rose filed a motion in our case seeking to set aside the $1 million
18   judgment pursuant to Rule 60(b), Fed. R. Civ. P., arguing that the Stipulated Judgment is
19   void, unconscionable, or that applying it prospectively is no longer equitable—in each
20   instance challenging the enforceability of the $1 million Judgment.  We denied the motion,
21   concluding that Rose failed to establish the "extraordinary circumstances" required to support
22   setting aside a judgment under Rule 60(b).  (Doc. 60).

23   In the most recent chapter in this saga, Seychelles has moved for an order requiring
24   Rose to show cause as to why he should not be held in contempt for his violation of the 25-
25   year non-compete clause contained in the Settlement Agreement and Stipulated Judgment.
26   He contends that Rose continues to violate the terms of the NCA because of his relationship
27   with Maria Esparza and her company, Signature Formulations.  Now called upon to enforce
28   the 25-year NCA, we must first consider its legal validity.

1

## II.

2   Under Arizona law, covenants not to compete that are ancillary to contracts for

3   employment or sale of a business will be enforced only where they are reasonably limited as

4   to time and geography.  "When a business is sold, the value of that business's goodwill

5   usually figures significantly into the purchase price.  The buyer therefore deserves some

6   protection from competition from the former owner." <u>Valley Med. Specialists v. Farber</u>, 194

7   Ariz. 363, 368, 982 P.2d 1277, 1282 (1999).  However, the scope of a covenant must be no

8   greater than necessary to protect the legitimate business interests of the party seeking

9   enforcement.  <u>Id.</u> at 370, 982 P.2d at 1284.  "To be enforced, the restriction must do more

10  than simply prohibit fair competition by the employee."  <u>Id.</u> at 367, 982 P.2d at 1281. "The

11  test of validity of restrictive covenants is one of reasonableness."  <u>Olliver/Pilcher Ins. v.</u>

12  <u>Daniels</u>, 148 Ariz. 530, 532, 715 P.2d 1218, 1220 (1986).

13  By any standard, the NCA in the Settlement Agreement, as adopted by the Stipulated

14  Judgment, is unreasonable in both its duration and geographic scope.  Arizona law permits

15  only those restrictive covenants that are reasonably limited as to time and territory.  A 25-

16  year, worldwide restriction[1] provides no limitation as to either duration or geography, and

17  accordingly constitutes an unreasonable restraint of trade.  Recall that the original NCA in

18  connection with the asset purchase agreement limited the restrictive covenant to three years,

19  an arguably reasonable term.  However, the duration was expanded to 25 years as part of the

20  parties' Settlement Agreement.  Neither punishment for prior NCA violations, nor a lifelong

21  prohibition of competition serves as a legitimate business purpose to support this

22  unreasonable NCA.

23

## III.

24  Generally, courts do not rewrite contracts for parties.  <u>Id.</u> at 533, 715 P.2d at 1221.

25  However, "[i]f it is clear from its terms that a contract was intended to be severable, the court

26  _____

27  [1]In addition to markets in the United States, Seychelles seeks to enjoin any action by
Rose to sell in a Vietnamese market (doc. 61-1, ex. K at 104), a Mexican market, (doc. 61-1,

28  ex. L at 106), and a Norwegian market (doc. 61-1, ex. C at 120).

can enforce the lawful part and ignore the unlawful part." <u>Id.</u> "Arizona courts will 'blue pencil' restrictive covenants, eliminating grammatically severable, unreasonable provisions." <u>Farber</u>, 194 Ariz. at 372, 982 P.2d at 1286.  Here, the Settlement Agreement contains an enforceability clause whereby the parties agreed that in the event any clause is ruled legally unenforceable, the remaining portions of the Agreement will remain in full force and effect. (Doc. 1, ex. A, ¶ 15).  We conclude that paragraphs (a), (b), (e) and (f) of the Settlement Agreement (doc. 1 at 15) and the Stipulated Judgment (doc. 6 at 2) are invalid and legally unenforceable.[2]

## IV.

**IT IS ORDERED DENYING** Seychelles' motion for an order to show cause (doc. 61) and **DENYING** Seychelles' renewed motion (doc. 67).

DATED this 27th day of March, 2015.

_Frederick J. Martone_

Frederick J. Martone
Senior United States District Judge

---

[2]This holding does not affect that portion of the permanent injunction prohibiting Rose from infringing on Seychelles' trade dress, trademarks or logos contained in paragraphs (c) and (d).